UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-80180-Cr-CANNON

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

HOWARD WRIGHT, et al.,

          Defendants.
_____/

## PLEA AGREEMENT

The United States of America (hereinafter "the United States" or "this Office"), and HOWARD WRIGHT (hereinafter referred to as the "defendant"), enter into the following agreement:

1.    The defendant agrees to plead guilty to Count 8 of the Indictment, which charges the defendant with Attempted Reentry after Deportation for a Felony, in violation of Title 8, United States Code, Sections 1326(a) and 1326(b)(1). The defendant admits that he is, in fact, guilty of that offense.

2.    The defendant is aware that the sentence will be imposed by the Court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a

Pre-Sentence Investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense(s) identified in paragraph 1, and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3.  The United States agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to

2

avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. The United States, however, will not be required to make this motion and recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any jury, governmental entity, or official; or (4) attempts to withdraw his guilty plea after a finding by the Court that such was knowingly and voluntarily made.

4. **MAXIMUM PENALTIES:**

a.) The defendant understands and acknowledges that the Court may impose a maximum term of ten (10) years' imprisonment, to be followed by a maximum term of three (3) years' supervised release, and a fine of up two-hundred and fifty-thousand dollars ($250,000.00).

b.) **Immigration Consequences**: The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to Reentry after Deportation, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one,

3

including the defendant's attorney or the Court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the defendant's plea may entail, even if the consequence is the defendant's automatic removal from the United States. The defendant also understands and acknowledges that if he is removed or deported from the United States following his conviction in this case, it is a serious federal felony offense to thereafter reenter the United States without obtaining the prior express written permission of the United States Secretary of Homeland Security.

5. The defendant further understand and acknowledges that, in addition to any sentence imposed under the preceding paragraph of this agreement, a special assessment in the amount of $100.00 will be imposed on the defendant as to the Count of Conviction. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. Payment may be either in the form of cashier's check or money order made payable to the Clerk of Court, Southern District of Florida, or in cash. It is the prosecuting AUSA's duty to ensure that the special assessment has been paid at the time of sentencing. If a defendant is financially unable to pay the special assessment, the defendant should be required to present evidence to the United States and the Court as to the reasons for his failure to pay.

6. The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office"), and the defendant, reserve the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant

information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7. The defendant is aware that his sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

8. This Plea Agreement constitutes the entire agreement and understanding

between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 03/14/2023    By: _____
                    JOHN C. McMILLAN
                    ASSISTANT UNITED STATES ATTORNEY

Date: 3/3/23        By: _____
                    JAMES ALAN SWETZ, ESQ.
                    ATTORNEY FOR DEFENDANT

Date: 2/3/23        By: HOWARD WRIGHT
                    HOWARD WRIGHT
                    DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-80180-Cr-CANNON

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

HOWARD WRIGHT, et al.,

        Defendants.
_____/

## STIPULATED STATEMENT OF FACTS

### A.  Elements of Offense

By his signature below, the defendant understands and acknowledges that were this matter to have proceeded to trial, the United States would have had to prove the following elements beyond a reasonable doubt as to Count 8 of the Indictment, which charges him with Attempted Reentry after Deportation for a Felony, in violation of Title 8, United States Code, Sections 1326(a) and 1326(b)(1):

First:    That the defendant was an alien, that is, not a natural born or naturalized citizen of the United States on or before October 25, 2022;

Second:    That before October 25, 2022, the defendant had previously been arrested and removed (deported) from the United States; and,

Third:    That thereafter the defendant attempted to enter the United States without the permission of the Secretary of Homeland Security or his/her predecessor, the Attorney General of the United States.

1

B.  **Statement of Facts**

Had this matter proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt, through admissible testimony and evidence, which the defendant agrees, by his signature below, are true and correct facts, and satisfy all the necessary elements of the offenses of conviction referenced above and in paragraph 1 of the Plea Agreement:

1. U.S. Coast Guard (USCG) personnel from the USCG Cutter Resolute would testify that on October 30, 2022, they received a report from their Sector Miami radio dispatch of a vessel taking on water approximately 10 nautical miles east of Lake Worth Inlet which they know to be an area located within the Special Maritime and Territorial jurisdiction of the United States, adjacent to Palm Beach County, within the Southern District of Florida. USCG Resolute reported approximately 8 persons on board and launched a small vessel to retrieve the persons. The vessel, a 22-foot white Mako center console was taking on water and in immediate danger of sinking, and all 8 passengers were successfully embarked onto the USCG small craft from the sinking Mako vessel. Shortly thereafter, the floundering vessel sank in open water.

2. USCG Cutter Resolute personnel determined that the following persons were recovered from the sinking vessel:

one (1) Bahamian male (defendant CLEARE);

one (1) Jamaican male (Howard Wright);

three (3) Cuban females;

one (1) Cuban male;

2

one (1) adult Chinese female; and

one (1) accompanied minor 3-year old Chinese child.

3. After completing biometrics (except for the minor female Chinese national) all 8 foreign nationals were transferred to USCG Cutter Margaret Norvell. None of the aforementioned foreign nationals (to include defendant WRIGHT) were in possession of any documentation which would lawfully permit them to enter the United States of America. The foreign nationals were ultimately returned to the Bahamas by the USCG, with the exception of defendants Cleare and WRIGHT.

4. After completion of the biometrics two individuals Doyle Cleare, a citizen and national of the Bahamas and captain of the vessel, and Howard WRIGHT, a citizen and national of Jamaica, came back with positive matches in the IDENT/APIS system for criminal histories in the United States, indicating both persons were previously removed from the United States.

5. Following their apprehension by the United States Coast Guard, defendants Cleare and WRIGHT were first landed at the United States Coast Guard Station in Riviera Beach, Palm Beach County, Southern District of Florida, and then taken to the United States Border Patrol Station, also located in Riviera Beach, to be interviewed.

6. On November 1, 2022, HSI Special Agents conducted a post-*Miranda* audio and video recorded interview of defendant WRIGHT. Defendant WRIGHT stated that he was in Cuba and travelled to Nassau, Bahamas, paying the smuggling organization approximately $10,000 upon arrival. Defendant WRIGHT stated he then departed to Freeport, Bahamas and later to Bimini, Bahamas. Defendant WRIGHT advised that he

3

stayed in run down houses during the trip, and on Tuesday October 25, 2022, he was taken by boat to another vessel waiting offshore of Bimini, Bahamas, already loaded with other persons seeking passage to the United States, and Cleare serving as the vessel's captain. Defendant WRIGHT said that they travelled approximately three hours or so before the vessel broke down. Defendant WRIGHT stated that, at one point the captain (Cleare) was looking at a GPS when a wave hit the vessel and Cleare dropped the GPS overboard. Defendant WRIGHT stated that his intention and understanding was that upon boarding the Mako vessel captained by Cleare, he would be transported to the Miami area of the United States.

7. Defendant WRIGHT stated that after they broke down, they drifted at sea in rough waters, and that the only food available for the child was seaweed they grabbed from the ocean since there was no food or water provisions onboard the vessel. Defendant WRIGHT stated that when the Coast Guard arrived to rescue them, he and Cleare were physically fighting because Cleare was doing nothing to help them, while the vessel was sinking and defendant WRIGHT furiously attempted to bail out the rising water by hand.

8. Certified court records would establish that on or about April 4, 2000, in Escambia County, Florida, defendant WRIGHT was adjudicated guilty for conspiracy to traffic Cannabis with a weight of 0-50 pounds. Defendant WRIGHT was sentenced to serve 21 months' incarceration. On or about January 22, 2004, defendant WRIGHT was removed from the United States to his native country of Jamaica. Thereafter, on or about January 12, 2009, United States Border Patrol Officers stopped to render aid after coming upon a three car accident in Miami Dade County. Defendant WRIGHT gave Border Patrol Officers

a false name and claimed Haiti as his citizenship. Defendant WRIGHT was taken into custody by Border Patrol Officers and charged with illegal re-entry. On or about June 18, 2009, defendant WRIGHT was sentenced to 41 months confinement in the federal penitentiary and was thereafter removed (deported) from the United States to Jamaica on or about September 12, 2012.

9. A custodian of records from the Department of Homeland Security would testify that she conducted a diligent search of the United States Immigration CLAIMS database, and found no record that either defendant WRIGHT or Cleare had sought or received authorization from the Secretary of Homeland Security or his/her predecessor, the Attorney General of the United States, to re-enter the United States. Nor were CLEARE, WRIGHT, or any of the other six foreign nationals on board the vessel CLEARE captained in possession of any documents which would have authorized them to enter the United States legally.

Respectfully submitted,

MARKENZY LAPOINTE ACTING UNITED STATES ATTORNEY

BY: _____
JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY

SEEN, AGREED AND APPROVED:

*Howard Wright*
HOWARD WRIGHT
DEFENDANT

*[signature]*
JAMES ALAN SWETZ, ESQ.
ATTORNEY FOR DEFENDANT

Dated: 2/3/23